In the Matter of the Petition of VICTORIA NAGEEB GORRA for Letters Testamentary of the Goods, Chattels and Credits Which Were of NAGEEB GORRA, Deceased, for a Construction of the Will and Instructions as to the Petitioner's Rights under the Will.

Surrogate's Court, Kings County, October 19, 1929.

*Edward J. Leon*, for the petitioner.

*Edward J. Flanagan*, special guardian for Robert Gorra, an infant.

WINGATE, S. This case arises upon a petition for a construction of the will of the decedent which was duly admitted to probate in this court on the 28th day of August, 1929.

The petitioner prays that the will may be so construed as to award her letters testamentary without bond, that it be held that she was appointed trustee of the share of her infant child, and that the instrument authorizes her to continue the business of the decedent.

The will is typewritten on the letter head of the decedent's business firm, and aside from the printed portions of such letter head and the attestation clause, reads as follows:

"NEW YORK, *March 15th*, 1929.

" I, Nageeb S. Gorra of the City of Brooklyn in the County of Kings and State of New York, being of sound mind, declare this to be my last will and testament. Being obliged to sail for China for business reason I feel it my duty to make this will before I leave.

" I leave and bequeath to my Wife Victoria N. Gorra and my son Robert N. Gorra all my interest in the firm of Gorra Bros., of 220 Fifth Ave., in the City of New York.

" I hereby direct that my interest in the above mentioned firm be transferred in the name of my Wife and my Son Robert, and that my Wife shall have absolute control over her share and that of my Son Robert until he becomes of Legal age, and direct that she act without restrictions or Bonds, and that she is to have the full use of all incomes derived from my interest of whatever nature.

" I also direct that my Wife take active part in the business and to be guided by my Brother Wade with whom I have always been in Partnership, and Whom I hereby appoint with my Wife as guardian of my Son Robert. I also direct that my Brother and Wife continue the business which has taken such a long time and hard work to build, for as long a time as in their opinion it can be made profitable.

" I hereby order that all my just debts and expenses be paid out of my estate and the balance be turned over to my wife as above stated."

At the time of the probate it was developed by one of the subscribing witnesses that, on the eve of his departure for China, deceased personally typewrote this will and supervised its execution. He died in China while on the contemplated trip.

Testator's sole heirs at law and next of kin are his wife, who is the petitioner herein, and their son, who is about four years of age.

As in all cases of construction, the paramount rule governing the determination of the questions propounded is as to the intention of the testator so far as it is possible of ascertainment (*Matter of Buttner*, 243 N. Y. 1; *Matter of Hughes*, 225 App. Div. 29; *Matter of Gurlitz*, 134 Misc. 160; *Matter of Quinby*, Id. 296), which intent, so far as discernible, must be gathered from the words which testator himself has used (*Matter of Durand*, 250 N. Y. 45; *Matter of Gargiulo*, 134 Misc. 182), but in this respect the will is to be read as a whole and all its parts are to be considered in reaching a result. (*Livingston* v. *Ward*, 247 N. Y. 97; *Matter of Kirkman*, 134 Misc. 527; *Matter of Farkouh*, Id. 285.)

The first question propounded relates to the propriety of the issuance of letters testamentary to Victoria N. Gorra, testator's widow. The law applicable to this question was clearly settled in this State over half a century ago. In *Hartnett* v. *Wandell* (60 N. Y. 346) the court says (at p. 350): " Mr. Williams, in his treatise on the law of executors, says: ' Although no executor be expressly nominated in the will by the word executor, yet if by any word or circumlocution the testator recommend or commit to one or more the charge and office, or the rights which appertain to an executor, it amounts to as much as the ordaining or constituting him or them to be executors.' (1 Williams on Ex. 209). The proposition is abundantly sustained by authority. The rule grows out of the fundamental principle universally recognized, that effect shall be given to the will of a testator when not contrary to the rules of law, as such will, and the intent of the author of it can be gathered from the whole instrument."

After discussing a large number of decisions, the court continues

(at p. 351): " These and numerous other cases that might be cited are only referred to as showing the great liberality which the courts have exercised in committing the execution of the wills to those indicated in any manner by the will and in accordance with the intent of the testator, and so as not to disappoint his wishes, regardless of technicalities. The practice of the courts has been accommodated to the will, rather than the will made to give way to technical forms and modes of procedure."

The court reaffirmed this principle in a comparatively recent decision, saying in *Matter of Bergdorf* (206 N. Y. 309, at p. 312): " The intent of the testator as to how, when and by whom his estate shall be conserved, paid out and distributed will be, if needs be, strenuously searched for in the testamentary language and when ascertained will be carried out in so far as it is not inimical to law."

Further applications of this principle may be found in *Baker* v. *Baker* (18 App. Div. 189, 191); *Matter of Walsh* (144 N. Y. Supp. 442, 443); *Matter of Blancan* (4 Redf. 151).

In the last cited case it is said (at p. 152): " It is not necessary that the appointment of an executor should be made in so many words, but any provision in the will showing that the testator intended that the duties of an executor should be discharged by the person named, is sufficient to constitute such person an executor according to the tenor thereof, and to entitle him to letters testamentary thereon."

At p. 153: " It is also manifest from the wording of the will of the testatrix, that she intended her husband should perform the duties of executor, because she dispenses with his giving security for her estate, showing conclusively that she contemplated and intended that he should have the possession, control, and management thereof."

In the instant case we have precisely the same situation referred to, and on the entire instrument there can be no basis for question that it was testator's intention that his wife, Victoria N. Gorra, should administer the affairs of his estate, and it must, therefore, be held that she is entitled to receive letters testamentary.

The next question propounded, as to whether or not the testator's wife is appointed testamentary trustee of her infant son's share in the estate or whether she merely has control of it as his guardian, is not susceptible of such ready solution. The pertinent phrases of the will are:

" I * * * bequeath to my Wife * * * and my son * * * all my interest in the firm * * *.

" I * * * direct that my interest * * * be transferred in the name o fmy wife and my son * * * and that my wife

shall have absolute control over her share and that of my son * * * until he becomes of legal age * * *.

" I direct * * * that she is to have the full use of all incomes derived from my interest of whatever nature.

" I hereby order that * * * the balance [after payment of debts, etc.] be turned over to my wife * * *."

The first quotation above made and the final clause of the second would seem to indicate an immediate legal vesting of one-half of the property in the son, but the balance of the second and the third and fourth quotations are inconsistent with such a construction. If it were to be held that she was to have merely the control of a guardian, neither the direction for her " absolute control," which is directed in the second paragraph, nor the " full use of all incomes," granted by the third, would be given effect; nor would it be possible to direct that the balance of the estate be turned over to her as the final paragraph enjoins. In other words, such a construction would require the virtual nullification of three distinct provisions of this short will.

On the other hand, if the will is to be construed as presently vesting in the wife absolute ownership as to one-half, and a holding of the other half on a trust during the minority of the son, all of the pertinent directions will be given efficacy. Such a construction would bring all of the provisions of the will into harmony which is one of the main aims of the court in these cases. (*Livingston* v. *Ward*, 247 N. Y. 97; *Matter of Sargent*, 125 Misc. 498; *Matter of Gargiulo*, 134 id. 182; *Matter of Farkouh*, Id. 285; *Keefe* v. *Keefe*, Id. 705.)

It is, therefore, determined that the will appoints Victoria N. Gorra trustee as to one-half of testator's net estate for the minority of Robert N. Gorra, " with full use of all income derived " from such trust property, and that upon the son's attaining his majority such trust interest is to be conveyed to him by her absolutely.

This determination is in accordance with the principles laid down in *Marx* v. *McGlynn* (88 N. Y. 357, 376); *Mee* v. *Gordon* (187 id. 400, 407); *Close* v. *Farmers' L. & T. Co.* (195 id. 92, 99); *Morss* v. *Allen* (181 App. Div. 79, 82); *Matter of Johnson* (133 Misc. 566, 567), and many other cases which might be cited.

Since testator expressly provides " that she act without restriction or Bonds " it is obvious that no bond or other security may be required of her in either capacity.

We now come to the consideration of the question of the powers conferred upon the executrix and trustee for the continuance of the business of the testator. This court had occasion to consider

some of the principles governing this question in *Matter of Glass* (134 Misc. 291). In that case the question related to the powers of an administrator to continue the business of the deceased, and it was held that no such power was inherent in the office. The question here involved is the reverse of the one there determined and requires a consideration of the right of a testator to direct that his personal representative continue his business, and the powers, duties and obligations of an executor resulting from such direction.

The leading case on the subject of the continuance of business by a personal representative is *Willis* v. *Sharp* (113 N. Y. 586), but the questions resulting from such a direction have been before the courts on many occasions and most of the principles involved are well established.

The outstanding rules governing such cases may be stated as follows:

*First.* " A testator may authorize or direct his executor to continue a trade * * * or business." (*Willis* v. *Sharp*, 113 N. Y. 586, 589.)

*Second.* " The intention of a testator to confer upon an executor power to continue a trade must be found in the direct, explicit and unequivocal language of the will or else it will not be deemed to have been conferred." (*Willis* v. *Sharp, supra,* p. 590; *Columbus Watch Co.* v. *Hodenpyl,* 135 N. Y. 430, 435; *Matter of Kohler,* 231 id. 353, revg. 193 App. Div. 8; *Matter of McCollum,* 80 id. 362; *Matter of Archer,* 77 Misc. 288.)

*Third.* Such authority, if found, authorizes the conduct of the business in the usual manner unless otherwise expressly directed or limited. (*Matter of Rosenberg,* 213 App. Div. 167.)

*Fourth.* A power " to carry on the testator's trade, or to continue his business in a firm of which he was a partner, without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade and not the general assets of the estate." (*Willis* v. *Sharp, supra,* p. 590; *Thorn* v. *De Breteuil,* 179 N. Y. 64, 78; *Matter of Hickey,* 34 Misc. 360.)

*Fifth.* The trade fund which may thus be employed embraces the general property employed by testator in the business including the accounts receivable. (*Boulle* v. *Tompkins,* 5 Redf. 472, 478.)

*Sixth.* The ordinary expenses of the conduct of the business are chargeable to income. (*Dannat* v. *Jones,* 2 Dem. Sur. 602; affd., *sub nom. Matter of Jones,* 103 N. Y. 621.)

*Seventh.* Since " the creditors of the testator * * * are

entitled to have the assets collected in and applied upon their debts  *  *  *  a direction of the testator that his business should be continued would not be allowed to interfere with this right of existing creditors, or put to hazard the property of the testator applicable to the payment of their debts." (*Willis* v. *Sharp, supra,* p. 590.)

*Eighth.* An executor who continues testator's business pursuant to powers granted by the will is not entitled to extra compensation for so doing in the absence of agreement by all persons interested in the estate. (*Matter of Popp,* 123 App. Div. 2, modifying s. c., *sub nom. Matter of Kempf,* 53 Misc. 200.)

*Ninth.* "An authority or direction" for continuance of the business, " if strictly pursued, will protect the executor from responsibility to those claiming under the will, in case of loss happening without his fault or negligence." (*Willis* v. *Sharp, supra,* p. 590; *Matter of Friedlander,* 189 App. Div. 90; *Matter of Moore,* 69 Misc. 535.)

*Tenth.* " An executor, carrying on a trade under the authority of the will, binds himself individually by his contracts in the trade. He is not bound to carry on the trade and incur this hazard, although authorized or directed to do so; but if he does carry it on, the contracts of the business are his individual contracts." (*Willis* v. *Sharp, supra,* p. 591; *Delaware, L. & W. R. R. Co.* v. *Gilbert,* 44 Hun, 201; affd., 112 N. Y. 673; *Decillis* v. *Mascelli,* 152 App. Div. 304; *Helling* v. *Boss,* 121 N. Y. Supp. 1013; *Gatti-McQuade Co.* v. *Flynn,* 79 Misc. 430; *Hughes* v. *Hiscox,* 110 id. 141; *Matter of Sharp,* 5 Dem. Sur. 516; *Austin* v. *Munro,* 47 N. Y. 360.) As is said in the last cited case (at p. 366): " The principle is, that an executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator."

*Eleventh.* " An authority or direction " for continuance of the business will entitle the executor " to indemnity out of the estate, for any liability lawfully incurred within the scope of the power." (*Willis* v. *Sharp, supra,* p. 590; *Boulle* v. *Tompkins,* 5 Redf. Sur. 474; cf. *Hamlin* v. *Smith,* 72 App. Div. 601.)

*Twelfth.* Those having claims resulting from the continuance of the business may, in the ordinary case, proceed only against the executor in his individual capacity. (*Austin* v. *Munro, supra,* p. 366; *Delaware, L. & W. R. Co.* v. *Gilbert, supra; Helling* v. *Boss, supra; Gatti-McQuade Co.* v. *Flynn, supra; Boulle* v. *Tompkins, supra*), although there is some authority for the position that where the trade conducted is a partnership, or the executor

is insolvent they may go against the trade assets. (Cf. *Willis* v. *Sharp, supra,* p. 591; *Columbus Watch Co.* v. *Hodenpyl,* 135 N. Y. 430, 434, 435; *O'Brien* v. *Jackson,* 167 id. 31, 35; *Hamlin* v. *Smith, supra.*)

*Thirteenth.* But where the testator has expressed in his will an intention to " bind his general assets for all the debts of a business to be carried on after his death * * * then, in case of the insolvency of the executor * * * in equity, the general assets become liable for the debts of the business." (*Willis* v. *Sharp, supra,* p. 591; *Columbus Watch Co.* v. *Hodenpyl, supra,* p. 434; cf. *Hamlin* v. *Smith, supra.*)

Applying the foregoing principles to the instant case, it is apparent that testator has expressly and unequivocally directed his wife to continue his business and that she is authorized to do so both as executrix and as testamentary trustee for so long a time as she and testator's brother believe it to be profitable, employing for that purpose testator's share of the funds invested therein, to the extent that these may not be required for the payment of his obligations existing at the time of his death. She is under no obligation to exercise this power, but if she does so, she will be protected to the extent of the assets belonging to testator which were in the business at his death, so long as the business is conducted substantially in the manner and along the lines in which it was conducted during testator's life, during such period as there is a reasonable prospect of its being profitable and no loss occurs through her fault or negligence. The ordinary expense of the business will be payable from the income of this portion of the estate, and although she will become individually liable for all debts contracted in the continuance of the business, she will be entitled to indemnity from that portion of the estate dedicated to it.

The prayer of the petitioner is, therefore, granted, and the will construed as entitling her to letters testamentary and of trusteeship, without bond, and as authorizing her to continue the business of the decedent so long as she and testator's brother believe it to be profitable.

Proceed accordingly.