Jasen, J.
Henry Muller, Jr., died testate on October 18, 1961, leaving two sons, Henry Muller, III, the executor of the estate before us, and Edwin G-. Muller, the objectant in this case. Muller’s will was quite simple. It provided that his two sons were to share equally in his estate, and that Henry be appointed executor. The will authorized the executor to continue the testator’s businesses if, in the executor’s discretion, it was for the best interests of the estate. The executor was also empowered to sell, mortgage or lease the testator’s real property under such terms and conditions as the executor deemed best.
The major assets of the estate, pertinent to this appeal, are: a 100% interest in Muller Bros. Holding Dorp., a real estate holding corporation having but one tenant, Muller Bros., Inc.; 66%% ownership of Muller Bros., Inc., a domestic corporation engaged in the business of moving and storage of household goods (the remaining one third of this corporation was owned *340 by Henry Muller, III, the executor); and approximately $70,000 in cash.
The objectant raised 31 objections to the executor’s account and demanded the executor be surcharged. After a number of hearings a decree was entered providing for a surcharge of the executor in the sum of $61,178.96. The Appellate Division modified the Surrogate’s decree on the law and the facts, reducing the surcharges to $17,460.44.
We agree with the Appellate Division, except on two issues.
One of the issues raised by the objectant bears on the right of an executor to use assets of the general estate to pay corporate obligations where the testator specifically conferred the executor with the power to continue decedent’s businesses.
The Surrogate surcharged the executor $25,224.96 for the payment of corporate obligations out of the general assets of the estate. The Appellate Division reduced this portion of the surcharge to $3,000, holding that “ [m] ost of these payments were made during the early period of administration, to preserve possibly valuable estate assets. However, certain sums were expended in 1963, after the time at which these assets could reasonably have been sold or distributed. As to these sums, the surcharges were proper.”
The intention of a testator to confer upon an executor power to use general assets of the estate to continue various businesses of the testator ‘ ‘ must be found in the direct, explicit and unequivocal language of the will or else it will not be deemed to have been conferred ”. (Willis v. Sharp, 113 N. Y. 586, 590; Columbus Watch Co. v. Hodenpyl, 135 N. Y. 430, 435.)
Although the will did authorize the executor to continue the various businesses of the testator “ if in his discretion it [was] for the best interest of [the] estate ”, such authorization merely grants to the executor the power to conduct the various businesses with the funds already invested in them at the time of the testator’s death, and to subject only these funds, and not the general assets of the estate, to the hazards of the businesses. (Willis v. Sharp, supra; Thorn v. De Breteuil, 179 N. Y. 64, 78.)
Moreover, a clause in the will giving the executor authority to sell, invest and reinvest the general assets of the estate will not be taken as authority to invest additional money in the decedent’s businesses. (Matter of Gibson, 46 Misc 2d 954, 957.) While there *341 may be a valid purpose in continuing a business to preserve its value as a going concern, rather than to sell it piecemeal (Matter of Gibson, supra; Matter of Ridosh, 5 A D 2d 67; 3 Warren’s Heaton, Surrogate’s Courts [6th ed.], § 245), assets of the general estate may not be used for this purpose unless the will specifically so provides. Such was not the case here.
The other issue concerns three advances made by the executor from the estate, aggregating $27,750, for his own personal use. The executor repaid the .sum only when ordered by the Surrogate to return the money or pay a like amount to the objectant. Upon this accounting, the objectant contended that the executor should be surcharged for the use of the money.
The executor argues that he was a legatee in addition to being the executor and he was entitled to receive these amounts as prepayments of his legacy. He is incorrect.
An executor must at all times discharge his fiduciary duties so that all legatees are treated in like manner and without prejudice or discrimination. (Matter of Bush, 2 A D 2d 526, affd. 3 N Y 2d 908.) He owes an absolute duty of impartiality to all the beneficiaries of the estate. (Matter of Heinrich, 195 Misc. 803, 809; Matter of James, 86 N. Y. S. 2d 78, 89; 3 Warren’s Heaton, op. cit., supra, '§ 217, par. 4, subd. [b].)
While he was also a legatee, Henry Muller, III, was more importantly the executor of the estate and as such was under this duty .to impartially distribute the assets of the estate to the legatees (cf. Matter of Bricks, 27 Misc 2d 570; Matter of Moller, 52 N. Y. S. 2d 205; Matter of Loughman, 52 N. Y. S. 2d 200.) Since the executor withdrew funds of the estate for his own personal use, he should be surcharged with interest for the time that he had the use of $27,750 of estate funds.
Accordingly, the order appealed from should be modified in accordance with this opinion, and, as so modified, affirmed.
Chief Judge Fttld and Judges Burke, Scilifpi, Bergan, Keating and Breitel concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed with costs to appellant-respondent payable out of the estate.