James D. Hurley, S.
The decedent, Arthur B. Mack, died on June 17, 1955.
Letters of administration were issued herein to Rosemary D. Mack, daughter of decedent and Armour C. Mack, brother of the decedent, on the 22d day of June, 1955.
For some time prior to his death, decedent had conducted a grocery store business in the village of Lyons, New York.
In addition to the assets of the business, at the time of his death, he was the owner of a house situate on Broad Street, in the village of Lyons, New York, consisting of three apartments. He and his family occupied one apartment and the other two apartments were rented. He was also the owner of a mortgage on property in Fair Haven, New York, on which there was due at the time of his death $11,000 of principal.
After the death of the decedent, a conference was held with the attorney who had represented the decedent in his lifetime, who also was to be the attorney for the estate. At this time, it was decided that the widow would not apply for letters of administration, but that she would renounce her rights in favor of her daughter, Bosemary D. Mack, and her brother-in-law, Armour C. Mack. Bosemary D. Mack lived with her mother in the home at Broad Street, Lyons, New York and she resided there until the house was sold. At the time of his appointment, Armour C. Mack resided in the city of Bochester, where he still resides.
At or about the time of the appointment, it was suggested by the then counsel for the administrators that the business should be continued for the purpose of obtaining the best possible price for the sale of a going business. It was then decided that Bosemary D. Mack should continue the business. This was agreed to by the coadministrator, Armour C. Mack.
No formal inventory of the assets of the estate, more particularly of the assets of the grocery store, was made. However, an informal inventory was taken which has been used as the basis of determining the value of the assets at the time of death of the decedent.
*736 At the time of the death of the decedent, there were numerous accounts payable and numerous accounts receivable, these being mostly the result of transactions in connection with the store business.
After the death of the decedent and in the operation of the store, the administratrix, Rosemary D. Mack, extended further credit and incurred additional accounts payable.
The business was continued by Rosemary D. Mack from the date of her appointment until it was sold on or about the 21st day of April, 1956.
During the course of the administration, the administratrix, Rosemary D. Mack, set off to her mother, as the widow of the decedent, the sum of $1,000 in cash pursuant to section 200 of the Surrogate’s Court Act. Objections have been made to this setoff by creditors on the ground that the estate was insolvent and the setoff should not be allowed. There are and were at the time of the setoff ample funds in the estate to pay the funeral bill which has been allowed by the court on this accounting, as has the bill for the purchase and placing of the marker on the grave of decedent. The objections to the setoff of $1,000 to the widow are overruled and the payment thereof is approved, since this amount was not an asset of the estate and the payment thereof could be withheld only if such funds were necessary to pay the funeral expenses. (Matter of Schoenfelder, 161 Misc. 654.)
The sum of $300 paid by the administratrix, Rosemary D. Mack, to her then attorney for legal services is hereby approved, to be taken into consideration in determining any future allowance to be made to said attorney.
Rosemary D. Mack, had little or no experience in business. She relied upon her attorney and was led to believe that while operating the business she could retain for herself reasonable amounts for her services in the operation of the business and could supply to her mother and family reasonable amounts of food. In this she was mistaken. The cases definitely hold that one operating a business after the death of the intestate may not receive any compensation for services in connection therewith over and above the commissions to which the representative may be entitled. (Matter of Peck, 79 App. Div. 296; Matter of Ferrante, 190 Misc. 788.)
Unfortunately the operation of the store did not prove successful and at the time of the sale, there were insufficient assets to pay the claims of all the creditors.
*737 It appears from the testimony taken that the accounting method of the administratrix, Eosemary D. Mack, was inadequate in the extreme. In order to assist said administratrix in the keeping of her accounts, the then attorney for the estate obtained the services of one Elizabeth Merrigan. It appears that from the time of the beginning of the operation of the store by the administratrix until about September or October, 1955, certain monthly statements were prepared which indicated that a profit was being made in the business. However, at about that time one or more checks drawn on the account by the administratrix were returned for insufficient funds. It then became apparent that there was a grave discrepancy in the accounting and that the accounting up to that time did not correctly set out the condition of the business. At that time the then attorney for the estate requested Mrs. Merrigan to attempt to determine where the discrepancies might lie and to make a complete check and audit of the accounts. This involved a great deal of work by Mrs. Merrigan, and if it had not been for the undertaking of this work, it is doubtful if any one would be able to determine the condition of the business of the estate. Mrs. Merrigan has filed a claim against the estate for her work in this connection in the sum of $1,353.99. The court concludes that her services from the time of the appointment of the administratrix up to the request for the detailed audit in or about the month of October, 1955 are not a proper charge against the estate, inasmuch as she was performing services which should have been performed by the administratrix. However, when it became evident that there were discrepancies in the accounting and she was retained to make a complete audit and perform services for the benefit of all persons interested in the estate, which services were of actual benefit to all interested parties, it is the opinion of this court that she should be paid for such services. The court therefore allows her claim in the sum of $999.19, which the court determines to be a proper expense in the administration of the estate.
Objections to the account have been filed by the various creditors as follows: It is claimed that the administratrix should be surcharged for the reasonable rental value of the property owned by the decedent and the portion thereof occupied by the administratrix, her mother and children. In this connection it has been proved that the reasonable value of the rental of the apartment during the period of time it was occupied by the Mack family was $45 per month and that the apartment was so occupied for a period of 23 months. However, it appears *738 further that the widow, Esther Mack, collected the rents from the other two apartments and therefrom paid certain expenses, making payments of interest on the mortgage on the property and for operating expenses of the property. It also appears that Esther Mack advanced to the estate the sum of $700 in cash, for which she has presented a verified claim. While the claim as such for the loan of $700 is disallowed, the court will consider the amount of $700 so advanced as payment on account of rent for the apartment and will allow the same together with the over payments made by the widow on account of mortgage and household expenses in the total sum of $1,023.23. The administratrix, Rosemary D. Mack, should be surcharged for uncollected rents in the sum of $11.77.
Objection has been made to the failure of the administratrix to collect $200 for apartment rental from William and Doris Jones. Under all the circumstances, the court does not feel that a loss of $200 rental over the period of time involved is unreasonable or that the administratrix should be charged therefor. This objection is disallowed.
Objection has been made that the administratrix, Rosemary D. Mack, failed to use due diligence in selling the residence of the decedent at 80 Broad Street, Lyons, New York and as a result the estate sustained a loss of $1,719.91. During the administration of this estate and since the filing of the account, said residence has been sold by order of this court for the purpose of paying the debts of the decedent. The evidence in the record on this proceeding and as presented to the court in the proceeding for the sale of the real estate satisfies the court that attempts were made at various times to sell the residence property and that no sale thereof could be obtained. It is therefore the opinion of the court that this objection should be and it is hereby overruled.
Objections have been made by the creditors to the failure of the administratrix, Rosemary D. Mack, to collect the outstanding accounts receivable owing to the decedent at the time of his death, as well as the failure of the administratrix to collect accounts receivable which she permitted to accrue from the operation of the store subsequent to the date of death of the decedent. The court is advised that efforts are continually being made, and that since the accounting was commenced collections have been made on several accounts. Since this will necessitate a further final settlement of the accounts of the administratrix, Rosemary D. Mack, the court is at the present time in no position to determine as to what amount, if any, the administra *739 trix should be surcharged for failure to collect accounts and no surcharge is made therefor at this time.
Objection has been made to the failure on the part of the administratrix, Rosemary D. Mack, to collect interest on the mortgage owned by the decedent covering property at Fair Haven, New York and further to the failure of the administratrix to sell the mortgage. The court is advised that this mortgage has recently been foreclosed by the coadministrators and that the property has been sold. Since no report has been made to this court as to the outcome of the sale of the property, the court cannot at this time determine if any surcharge should be made. Evidence indicates that great efforts were made to dispose of this mortgage. While they were not made personally by the administratrix, they were made by her then attorney on her behalf. The evidence further indicates that no substantial firm offer was made for the mortgage. Under these circumstances and it appearing that it became necessary to foreclose the mortgage, the court cannot at this time surcharge the administratrix with failure to collect interest. The court does not hereby intend in any way to indicate what the final decision should be in connection with the handling of this mortgage. This is merely a determination that as of this date and under the existing circumstances, no surcharge will be made.
It appears from the account that the administratrix, Rosemary D. Mack, withdrew certain funds from the business for her personal use and also, that while conducting the business, furnished to her mother and the family meats and groceries from the store. As previously indicated, these withdrawals were unauthorized, being in the nature of compensation paid to the administratrix for services in conducting the business. The administratrix is therefore surcharged with $1,590.85 in cash withdrawn by her from the business, apparently as wages, plus the sum of $1,760 for groceries and meats taken from the business and used by the Mack family, making a total surcharge for these items of $3,350.85.
In the operation of the business the evidence shows that on certain occasions the administratrix apparently overstated the amounts paid out in cash in the business and understated the amounts received from the business. This resulted in so-called “missing cash” of $2,823.98. The court can find in the record no evidence of intentional fraud. However, the administratrix must be charged with this missing cash and is therefore surcharged under this objection with the sum of $2,823.98.
*740 It appears from the testimony that the assets of the store ■at the time of the death of the decedent were $7,712.51 and at the time of the sale of the store were $2,155.49. This makes a net loss to the estate from the operation of the store in the snm of $5,557.02 for which the administratrix is surcharged.
The question has been raised on this accounting as to what liability, if any, rests upon the coadministrator, Armour C. Mack, for the losses for which the administratrix has been surcharged as above.
Since Armour G. Mack apparently did not take into his possession any of the funds or assets of the estate, it is argued on his behalf that he may be responsible only for gross negligence in failing to perform the duties required of him under the circumstances. (Wilmerding v. McKesson, 103 N. Y. 329; Matter of Slensby, 169 Misc. 292.)
The creditors, citing the same cases, claim that the administrator, Armour 0. Mack, was negligent in performing his duties as administrator, as a result of which the assets of the estate were dissipated.
It is the opinion of this court that Armour C. Mack should not be surcharged with the missing cash.
The evidence indicates that Mr. Mack made periodic trips to Lyons and consulted with the attorney for the estate at which time he examined the regular monthly statements which showed’ that the business was being run at a profit until in or about the month of October, 1955. If these statements were examined and indicated personal withdrawals by the coadministratrix for her services in running the store and if, as the court believes, he was aware of the fact that the sum of approximately $40- per month was being taken by the administratrix for' the benefit of the Mack-family, it became his duty to object to these practices, and because of his failure to do so he should be surcharged to the extent of the cash withdrawals and to the value of the amount of the provisions withdrawn from the business for the benefit of the Mack family in the total amount of $3,350.85.
Since it appears further from the testimony that Armour C. Mack did nothing in the operation of the business, that as soon as he found that the business was losing money or that there was a serious discrepancy between the monthly reports and the actual amount of the estate assets, he took immediate steps to remedy the situation, he should not be surcharged with the loss in estate assets as a result of the operation of the business.
*741 None of the claims of creditors have been objected to by the administrators, except the claim of Elizabeth' Merrigan which has been determined above.
Objection has been made to the allowance of the clainf of S. N. Flickenger & Co., Inc., for merchandise supplied in the operation of the store after the date of death of the decedent. It. appears from the testimony that representatives of S. N. Flickenger & Co., Inc., knew of the death of Arthur ft. Mack, made an informal appraisal of the assets of the store and furnished' the' administratrix, Rosemary D. Mack, provisions for sale in the store aftér the déath of the intestate. For these provisions a claim has been filed against the estate in the sum of $2,089.41. Since the representatives of this company were well aware of the conditions and were presumed to know that the administratrix had no legal authority to carry on the business, they must look for payment of this amount to the administratrix, Rosemary D. Mack, individually. (Matter of Bramer, 151 Mise. 786.) The claim of S. N. Flickenger & Co:, Inc., is therefore allowed against the estate in the sum of $3,106:24" only, that being the amount owing by the decedent at the time of his death.
All other claims of Creditors are allowed in accordance with the revised schedule of claims attached to the memorándum of the counsel for the administratrix, Rosemary D. Mack and set forth therein as Schedule F.
The administratrix, Rosemary D. Mack should be surcharged
with the following items:
Missing cash........................ $" 2,823.00
Groceries and cash taken............. 3,350.85
Loss of assets by conduct of business.. 5,557.02
Loss of rents....................... 11.77
$11,742.64
The administrator, Armour C. Mack, should be surcharged with tfie amount of groceries and cash taken by the administratrix in the sum of $3,350.85.
This matter is adjourned until December 24, 1957 at the "Wayne County Surrogate’s office at 9:30 a.m. for determination of allowances and such other matters as may be required herein.